## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIMOTHY C. SAUNDERS, | : | CIVIL ACTION NO. 1:22-CV-741 |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| v. | : | |
| | : | |
| MICHELLE CRILEY, | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

This is a prisoner civil rights case filed pursuant to 42 U.S.C. § 1983. Plaintiff, Timothy C. Saunders, alleges that defendant Michelle Criley, a librarian in Camp Hill State Correctional Institution ("SCI-Camp Hill"), retaliated against him in violation of the First Amendment by filing misconduct charges that resulted in him getting fired from his job as a law clerk in the library. Criley has moved for summary judgment. The motion will be granted in part and denied in part.

## I.    Procedural History

Saunders filed this case on May 19, 2022. (Doc. 1). Criley moved to dismiss the complaint except to the extent that it advanced a retaliation claim on August 3, 2022. (Doc. 12). We granted the motion for partial dismissal on December 19, 2022, and granted plaintiff leave to file an amended complaint. (Docs. 27-28). Saunders filed an amended complaint on January 17, 2023, but erroneously failed to include any allegations related to the retaliation claim. (Doc. 30). Criley moved to dismiss the amended complaint on January 31, 2023. (Doc. 31). We granted the motion on July 10, 2023, but granted Saunders leave to file a second amended complaint

limited to his retaliation claim.   (Docs. 34-35).  Saunders filed his second amended complaint on August 8, 2023.  (Doc. 36).  Criley answered the second amended complaint on August 22, 2023.  (Doc. 37).  Criley filed the instant motion for summary judgment on April 30, 2024, following the close of fact discovery.  (Doc. 44).  Briefing on the motion is complete and it is ripe for review.  (Docs. 45, 48, 51).[1]

---

[1] Saunders asserts that Criley's reply brief in support of the motion is untimely.  (Doc. 52).  This argument is meritless.  Under the Local Rules, a reply brief is due "fourteen (14) days after service of the brief in opposition," M.D. PA. L.R. 7.7, and a document is considered served on counsel on the date that it is added to the court's electronic docket, see M.D. PA. 5.7.  Because Saunders's opposition brief was added to the court's electronic docket on June 4, 2024, Criley's reply brief was due within fourteen days of that date, or no later than June 18, 2024. M.D. PA. L.R. 7.7.  The reply brief was filed on June 17, 2024, making it timely under the Local Rules.

II.  **Material Facts**[2]

A.  **Factual Background**[3]

Saunders was incarcerated in SCI-Camp Hill at all relevant times.  (Doc. 36 ¶ 2; Doc. 37 ¶ 2).  Criley was employed during the relevant period as SCI-Camp Hill's head librarian.  (Doc. 36 ¶ 3; Doc. 37 ¶ 3).  Saunders was employed in the library as a law clerk.  (Doc. 36 ¶ 7; Doc. 37 ¶ 7).  At some point prior to January 6, 2022, Saunders filed multiple administrative grievances against Criley.  (Doc. 36 ¶ 11; Doc. 37 ¶ 11). On January 6, 2022, Saunders allegedly told Criley about these grievances and stated that he was going to file additional grievances against her in

_____

[2] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  M.D. PA. L.R. 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried.  Id.  Criley filed a statement of material facts as required by Rule 56.1.  (Doc. 46).  Saunders has filed a document that purports to respond to Criley's statement, but instead of responding to the numbered paragraphs in Criley's statement, it simply gives Saunders's own conclusory assertions of what legal issues are in dispute.  (See Doc. 50).  Because Saunders's statement does not comply with Local Rule 56.1, the court deems the facts set out in Criley's statement admitted.  (See M.D. PA. L.R. 56.1).  The court will cite directly to Criley's statement of material facts where applicable.

[3] Criley's statement of material facts does not address many of the underlying facts of Saunders's claims and instead focuses on his purported failure to exhaust administrative remedies.  Hence, the court cites the second amended complaint and the answer to the second amended complaint for much of the factual background. Where Criley has admitted a factual allegation in her answer, the court will cite both the second amended complaint and the answer and treat the fact as undisputed.  Where Criley has not admitted a factual allegation, the court will cite only the second amended complaint and indicate that the fact is merely alleged. Citations to allegations in the second amended complaint that have not been admitted in the answer shall not be construed as a statement that the allegations are undisputed or proven.

the future.  (Doc. 36 ¶ 9).  Shortly after this conversation purportedly occurred, Criley issued a misconduct citation against Saunders for refusing to obey an order and being present in an unauthorized area.  (Doc. 36 ¶ 11; Doc. 37 ¶ 11).  Saunders did not contest the misconduct citation and agreed to an informal resolution that included the loss of his job as a law clerk.  (Doc. 36 ¶ 11; Doc. 37 ¶ 11).  Saunders's second amended complaint alleges that Criley's actions constitute retaliation in violation of the First Amendment.  (See generally Doc. 36).

### B.    Exhaustion of Administrative Remedies

Exhaustion of administrative remedies in the DOC is governed by the three-step process outlined in the DOC's grievance policy, DC-ADM 804.  (See Doc. 45-1).[4] Under DC-ADM 804, a prisoner must first submit a written grievance within 15 working days from the date of the incident.  Id. § 1(A)(8).  DC-ADM 804 provides that the grievance must include "a statement of the facts relevant to the claim," "identify individuals directly involved in the events," and "specifically state any claims [the inmate] wishes to make concerning violations of Department directives, regulations, court orders, or other law."  Id. § 1(A)(11).  If the inmate is requesting compensation or other legal relief, he must request it in his initial grievance.  Id. § 1(A)(11)(d).  Once a grievance has been filed, the prison must respond to the grievance within 15 working days.  Id. § 1(C)(5)(g).  Next, the prisoner must submit a written appeal to the facility manager within 15 working days.  Id. § 2(A)(1)(a).

---

[4] A copy of DC-ADM 804 has been produced for the court's review as part of Exhibit 1 to Criley's motion for summary judgment and is included in Doc. 45-1 on this court's electronic docket.  (See Doc. 45-1 at 8-42).

Upon receiving the grievance, the facility manager must respond to the appeal within 15 working days.  Id. § 2(A)(2)(d)(1).  Finally, the inmate must submit an appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") within 15 working days.  Id. § 2(B)(1)(b).  SOIGA must respond to the final appeal within 30 working days.  Id. § 2(B)(2)(a)(1).

Saunders submitted five grievances during the period relevant to this case, between January 6, 2022, and February 28, 2022.  (Doc. 46 ¶ 8).[5]  In the first grievance, grievance number 962413, Saunders complained that the prison's law library and Criley were providing him inadequate resources to research his ongoing criminal proceedings.  (Doc. 45-1 at 44).  Saunders noted that he had brought these issues to Criley's attention, but that Criley "retaliated" against him in an unspecified manner when he did so.  (Id.)  By way of relief, Saunders requested that the law library provide him "proper access of courts."  (Id.)  He did not request monetary damages.  (Id.)  The grievance was denied by an initial review response on January 13, 2022.  (Id. at 45).  Saunders appealed the denial to the facility manager and SOIGA, but his appeals were denied.  (Id. at 47-48; Doc. 45-2 at 43-45).

In the second grievance, grievance number 962655, Saunders complained that Criley and one of her subordinate employees failed to take proper precautions to prevent the spread of COVID-19 when they allowed another inmate to work alongside Saunders in the library.  (Doc. 45-1 at 50).  Saunders did not allege

---

[5] As noted above, the court cites directly to Criley's statement of material facts because the factual averments contained in the statement are deemed admitted.  (See supra note 2).

retaliation by Criley.  (Id.)  After the grievance was denied at the initial level, Saunders unsuccessfully appealed through all stages of review.  (Id. at 51-53; Doc. 45-2 at 47-48).

In the third and fourth grievances, grievance numbers 962663 and 962794, Saunders alleged retaliation by Criley and requested that "sanctions" be issued against her.  (Doc. 45-1 at 55-56, 61-62).  The grievances were denied at the initial review level.  (Id. at 57, 63).  Saunders appealed grievance numbers 962663 and 962794 through all stages of the DOC's grievance process, but his appeals were denied.  (Id. at 58-59; 64-65; Doc. 45-2 at 50-54).

Saunders filed the fifth and final grievance, grievance number 963306, on January 12, 2022.  (Doc. 45-1 at 67).  Saunders accused Criley of retaliation and requested "compensation" from her.  (Id. 67-68).  The assigned grievance officer rejected the grievance on January 13, 2022, noting that it should have been filed according to the provisions of DC-ADM 801 because it challenged a disciplinary sanction.  (Id. at 69).  Saunders appealed, and SCI-Camp Hill's superintendent denied the appeal on January 25, 2022, upholding the initial determination that Saunders's grievance should have been filed under DC-ADM 801 rather than DC-ADM 804.  (Id. at 70-71).  Saunders appealed the rejection to SOIGA on February 2, 2022, and SOIGA received the appeal on February 14, 2022.  (Doc. 45-2 at 5, 56).  On appeal, SOIGA remanded the grievance for further proceedings at lower levels, finding that SCI-Camp Hill staff members erred by rejecting the claim on procedural grounds.  (Id. at 57).  SOIGA explained:

> Review of the record determined this grievance was improperly rejected for relating to DC ADM 801 procedures. Grievances specifically related to the DC ADM 801 misconduct process, misconduct charges, hearings, etc. are not addressed through the inmate grievance process. However, grievances regarding an alleged motivation behind the issuance of a misconduct (i.e., retaliation, harassment, conspiracy, etc.) shall be addressed through the DC ADM 804. . . . Therefore this grievance is being remanded for review and revised response.

(Id.) SOIGA's remand decision noted that the prison would provide a revised response to Saunders's grievance and that he could appeal the revised response with 15 working days. (Id. at 58). The record reflects that Dorina Varner, SOIGA's chief grievance officer, signed the response remanding the appeal on March 29, 2022, that George Little, the then-acting secretary of the DOC, signed the response on March 31, 2022, and that notice of SOIGA's decision and remand were provided to Saunders on April 6, 2022. (Id. at 57-58).

On remand, the grievance officer denied grievance number 963306 on its merits on May 3, 2022, finding no evidence of wrongdoing by Criley. (Doc. 45-1 at 72). Saunders did not appeal the revised decision through final appeal by SOIGA. (Doc. 46 ¶ 24; Doc. 45-2 at 5).

## III.  Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. FED. R. CIV. P. 56(a). The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of his right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett,

7

477 U.S. 317, 322-23 (1986).  The court is to view the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor."  Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986).  Only if this threshold is met may the cause of action proceed.  See Pappas, 331 F. Supp. 2d at 315.

**IV.**    **Discussion**

Saunders brings his claim under 42 U.S.C. § 1983.  Section 1983 creates a cause of action to redress constitutional wrongs committed by state officials.  42 U.S.C. § 1983.  The statute is not a source of substantive rights but serves as a mechanism for vindicating rights otherwise protected by federal law.  See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a Section 1983 claim, plaintiffs must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law."  Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Criley advances two arguments for summary judgment.  First, she argues that Saunders failed to exhaust administrative remedies prior to filing this case.  Second, she argues that Saunders should be barred from receiving compensatory damages because he does not allege that he suffered any physical injury.  We consider these arguments *seriatim*.

### A.     Exhaustion

Under the Prison Litigation Reform Act ("PLRA"), prisoners complaining about the conditions of their confinement must exhaust available administrative remedies before they may file suit in federal court.  42 U.S.C. § 1997e(a).  The PLRA requires proper exhaustion, meaning plaintiffs must administratively grieve their claims in accordance with the procedural rules of the prison in which they are incarcerated.  Downey v. Pa. Dep't of Corr., 968 F.3d 299, 305 (3d Cir. 2020) (citing Woodford v. Ngo, 548 U.S. 81, 88 (2006)).  Failure to exhaust administrative remedies is an affirmative defense that defendants must plead and prove; it is not a pleading requirement for plaintiffs.  Jones v. Bock, 549 U.S. 199, 216 (2007).

A prisoner is only required to exhaust administrative remedies that are "available."  Rinaldi, 904 F.3d at 268 (citing Woodford, 548 U.S. at 93).  An administrative remedy is unavailable, and administrative exhaustion is thus excused, in three situations: "(1) when 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when it is 'so opaque that it becomes, practically speaking, incapable of use,' such as when no ordinary prisoner can discern or navigate it; or (3) when 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'"  Id. at 266-67 (quoting Ross v. Blake, 578 U.S. 632, 643-44 (2016)).  If a defendant establishes that the plaintiff failed to exhaust administrative remedies, the burden shifts to the plaintiff to show that the administrative process was unavailable to him.  Id. at 268.

Criley asserts that Saunders did not exhaust administrative remedies with respect to grievance numbers 962413 and 962655 because those grievances did not allege retaliation by Criley.  (Doc. 45 at 8).  She then argues that he did not exhaust administrative remedies with respect to grievance numbers 962663 and 962794 because he did not request monetary damages in those grievances.  (Id.)  Finally, she argues that he failed to exhaust administrative remedies with respect to grievance number 963306 because he failed to appeal the grievance through final appeal to SOIGA after SOIGA remanded the grievance and the facility manager issued a revised decision.  (Doc. 45 at 8-9).

Saunders argues he should be deemed to have exhausted administrative remedies because SOIGA did not respond to his appeal of grievance number 963306 within 30 working days.  (Doc. 48 at 5).[6]  Criley argues in her reply brief that this is incorrect because the record reflects that SOIGA responded on March 29, 2022, the last date on which it could act in compliance with the 30-working-day timeline.  (Doc. 51 at 4-5).  Criley notes that Saunders was given notice of this action on April 6, 2022, and notes in a footnote that the relevant provision of DC-ADM 804 "requires SOIGA to act on a grievance appeal within 30 working days [but] does not dictate when notice of that remand needs to be sent to the inmate."  (Doc. 51 at 4 & n.4).

Because Saunders has failed to comply with Local Rule 56.1 and has failed to produce any evidence in support of his argument, the court finds the following

---

[6] Saunders does not argue that he exhausted administrative remedies through grievance numbers 962413, 962655, 962663, or 962794.  (See Doc. 48).

relevant facts undisputed: (1) SOIGA received Saunders's appeal on February 14, 2022; (2) March 29, 2022, was 30 working days from that date;[7] (3) the chief grievance officer at SOIGA signed the response to Saunders's appeal on March 29, 2022; (4) secretary Little signed the response on March 31, 2022; and (5) Saunders received notice of SOIGA's decision on April 6, 2022.  (See Doc. 45-2 at 2, 56-58).

The court must determine whether SOIGA's actions complied with its obligation to respond "within 30 working days of receipt" of the appeal as required by DC-ADM § 2(B)(2)(a)(1).  If SOIGA did not comply with this deadline, then the court must rule that Saunders exhausted administrative remedies.  See Shifflett v. Korszniak, 934 F.3d 356, 365 (3d Cir. 2019) ("[A]s soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement.").

Analysis of a prison's grievance policy is "essentially a matter of statutory construction."  Downey, 968 F.3d at 306 (quoting Spruill v. Gillis, 372 F.3d 218, 232 (3d Cir. 2004).  We begin "with the policy's plain language and ordinary meaning."  Id. (quoting Idahoan Fresh v. Advantage Produce, Inc., 157 F.3d 197, 202 (3d Cir. 1998)).  "We look to dictionary definitions to determine the ordinary meaning of a word."  Id. (quoting United States v. Husmann, 765 F.3d 169, 173 (2014).

_____

[7] The parties appear to agree on this fact, but the court has additionally conducted its own inquiry and takes judicial notice that March 29, 2022, was 30 working or business days after February 14, 2022 (exclusive of weekends and holidays).

The relevant provision of DC-ADM 804 requires SOIGA to "ensure" that "an appeal to final review is responded to within 30 working days of receipt unless otherwise extended."  DC-ADM 804 § 2(B)(2)(a)(1).  The policy provides that the chief of SOIGA may extend this deadline by "ten additional working days if the investigation of the appeal is ongoing."  Id. § 2(B)(2)(a)(3).  The inmate must be notified in writing if such an extension is granted.  Id.

Saunders construes the above language as requiring SOIGA to respond to an appeal—and return the response to the inmate—within 30 working days.  (Doc. 48 at 5).  Criley argues that the response must be completed within 30 working days, but that the policy does not impose any timing requirements for when the inmate must be provided with notice of this action.  (Doc. 51 at 4-5 & n.4).

We agree with Saunders's construction of the policy as requiring SOIGA to provide notice of its response to the prisoner within 30 working days.  This accords with relevant definitions of "respond" or "response" in both legal and standard dictionaries, which contemplate a response being transmitted by words or actions to another person.  See, e.g., *Response*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("An argument or brief *presented* in answer to that of a movant, appellant, or petitioner." (emphasis added)); *Respond*, MERRIAM WEBSTER'S UNABRIDGED DICTIONARY, https://unabridged.merriam-webster.com/unabridged/respond (last visited Nov. 20, 2024) ("[T]o say something in return : make an answer"); *Respond*, OXFORD ENGLISH DICTIONARY, https://www.oed.com/dictionary/respond_v?tab=meaning_and_use#25679859 (last visited Nov. 20, 2024) ("To give as an answer or reply.").

Other language in DC-ADM 804 also supports Saunders's construction of the policy as requiring SOIGA to notify the inmate of its decision within 30 working days.  See West Virginia v. EPA, 597 U.S. 697, 721 (2022) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.").  First, the policy contemplates that the thirty working-days deadline for SOIGA to respond to an appeal may be extended by ten working days, but only if the inmate is "advised in writing of the extension."  DC-ADM 804 § 2(B)(2)(a)(3).  This language suggests that any deviation from the 30 working-days deadline requires SOIGA to notify the inmate of the deviation.  It would be incongruous to allow SOIGA to circumvent this policy directive by purportedly completing a response before the 30 working-days deadline but then failing to notify the inmate of this action until after the deadline expired.  In essence, this would limit SOIGA to an extension of 10 working days if it notified the inmate of the extension while simultaneously allowing SOIGA to extend the deadline indefinitely simply by writing a response to the appeal without ever notifying the inmate of its action.

Second, Criley argues that Section 2(B)(2)(a)(1) "requires SOIGA to act on a grievance appeal within 30 working days, [but] does not dictate when notice of that remand needs to be sent to the inmate," (Doc. 51 at 4 n.4), but other portions of DC-ADM 804 similarly require a party to take an action without including separate language requiring the party to notify the other party of its action.  For example, Section 2(A)(1)(a) allows an inmate to appeal the initial denial of a grievance to the facility manager within 15 working days but does not include separate language

requiring the inmate to notify the prison of this action.  See DC-ADM 804 §
2(A)(1)(a) ("An inmate may appeal an initial review response/rejection to the
Facility Manager in writing, within 15 working days from the date of the initial
review response/rejection.").  Applying Criley's reasoning to this provision would
allow an inmate to write an appeal within 15 working days, not submit the appeal to
any prison officials, and then argue that the appeal was nonetheless timely because
the policy only required him to write the appeal by the deadline and not to notify
anyone that he did so.  This illogical reading is clearly not supported by the text of
Section 2(A)(1)(a).  Rather, the natural reading of both sections 2(A)(1)(a) and
2(B)(2)(a)(1) is that the requirement to act by a certain deadline also requires the
party to provide notification of its action by that deadline.

In sum, we construe Section 2(B)(2)(a)(1) as requiring SOIGA not only to
respond to an appeal within 30 working days, but also to notify the inmate of its
response by that deadline.  By failing to notify Saunders of its action until April 6,
2022, SOIGA did not comply with this deadline.  Saunders has accordingly
exhausted administrative remedies because the DOC failed to timely respond to a
properly submitted appeal.  Shifflett, 934 F.3d at 365.

### B.    Compensatory Damages

Criley's second and final summary judgment argument is that Saunders
should be precluded from recovering compensatory damages under the PLRA
because he has not alleged any physical injury.  (Doc. 45 at 9-10).  Saunders
responds that he is not barred from recovering compensatory damages because he
alleges that Criley's actions resulted in him losing his prison job and suffering

monetary losses. (Doc. 48 at 7-8). Criley concedes that damages might be available for these losses but reiterates her argument that Saunders should be barred from recovering compensatory damages for his emotional distress. (Doc. 51).

Compensatory damages for civil rights claims are governed by general tort law compensation theories, and a plaintiff may therefore recover compensatory damages if he proves that the defendant violated his constitutional rights in a way that caused him compensable injury. Allah v. Al-Hafeez, 226 F.3d 247, 250 (3d. Cir. 2000). Compensatory damages may be awarded for, *inter alia*, "out-of-pocket loss and other monetary harms." Id. In the prison context, the PLRA provides that compensatory damages are not available for an inmate's "mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e); accord Allah, 226 F.3d at 250-51.

Criley's argument appears to be based on the misconception that the PLRA bars *all* compensatory damages absent a showing of physical injury. (See Doc. 45 at 9-10). This is incorrect. The PLRA only bars incarcerated individuals from recovering compensatory damages for "mental or emotional injury" absent a showing of physical injury; it is silent as to any other basis for compensatory damages. See 42 U.S.C. § 1997e(e). Thus, the PLRA does not bar a plaintiff from recovering compensatory damages when he suffered compensable injuries other than mental or emotional harm. See id. These claims for damages continue to be governed by "general tort-law compensation theory" allowing plaintiffs to recover for "out-of-pocket loss and other monetary harms." Allah, 226 F.3d at 250.

Here, Saunders's second amended complaint seeks compensatory damages "for the violation of plaintiff's rights, and consequential pain, and suffering." (Doc. 36 ¶ 19). Criley is correct that Saunders's request for compensatory damages is barred to the extent it is based on his "mental or emotional injury"—i.e., his "pain and suffering"—because Saunders has not alleged that he suffered any physical injury. 42 U.S.C. § 1997e(e); <u>Allah</u>, 226 F.3d at 250-51. But because Saunders also alleges "out-of-pocket loss and other monetary harms" caused by the alleged violation of his constitutional rights, he is not barred from recovering all compensatory damages. <u>Allah</u>, 226 F.3d at 250. Hence, we will grant Criley's motion to the extent it seeks to bar Saunders from recovering compensatory damages for his mental or emotional injury but otherwise deny her request to bar Saunders from recovering compensatory damages.

## V.    <u>Conclusion</u>

We will grant Criley's motion for summary judgment to the extent that it seeks to bar Saunders from recovering compensatory damages for mental or emotional injuries but deny the motion in all other respects. We will direct the parties to file a joint status report indicating whether they wish to have the case referred to mediation. If the case is not resolved through mediation, the case will be scheduled for trial. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    November 21, 2024